## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| **ARTHUR BROWN** | **CIVIL ACTION FILE NO.:** |
| **Plaintiff,** | **8:26-cv-3067- JDA-PJG** |
| vs. | **JURY TRIAL DEMANDED** |
| **ANDERSON COUNTY SHERIFF'S OFFICE, SHERIFF CHAD MCBRIDE and DEPUTY N. LITTEER,** | |
| **Defendants.** | |

**COMES NOW** ARTHUR BROWN, Plaintiff, and brings this action against the above-named Defendants, showing the Court the following:

### I.       PRELIMINARY STATEMENTS

1. Plaintiff is a resident of Madison County, Georgia, and submits himself to the jurisdiction of this Court.

2. At all times relevant to this complaint, Defendant Anderson County Sheriff's Office (hereinafter "Defendant ACSO") has been a governmental agency in South Carolina, organized and existing under the privilege of the laws of the state of South Carolina, and operating and conducting business in Anderson County, South Carolina.

3. The business of Defendant ACSO is conducted by Defendant Sheriff Chad McBride ("Defendant McBride"), Defendant ACSO's highest ranking officer. Defendant ACSO and Defendant Sheriff Chad McBride, in his individual capacity, are ultimately responsible for the actions and inactions that resulted in the injuries sustained by Plaintiff.

- 1

4. Upon information and belief, Deputy N. Litteer is employed by Defendant ACSO and acted under color of state law at all times relevant to this action. Plaintiff further alleges that the partially identified employee and/or agent participated in the apprehension of Plaintiff, use of force against Plaintiff, deliberate indifference to medical needs, and the subsequent detention of Plaintiff, and personally participated in the constitutional violations described herein.

5. This action arises under 42 U.S.C. §1983. Jurisdiction is conferred under 28 U.S.C. §§1331 and 1343, as this suit seeks to redress deprivation of Plaintiff's rights, privileges, and immunities secured by the U.S. Constitution and federal law.

6. This Court has supplemental jurisdiction over related state law claims under 28 U.S.C. §1367(a).

7. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b), as the Defendants reside in and conduct business in this District, and the tortious acts, omissions, and injury occurred in Anderson County, South Carolina.

## II.     FACTS

8. Plaintiff incorporates the previous paragraphs of the Complaint as if realleged herein.

9. On September 9, 2023, Plaintiff was traveling in a vehicle on a two-lane road within Anderson County.

10. Plaintiff was traveling within the speed limit, his vehicle was in proper condition, and Plaintiff kept the vehicle under proper control.

11. Shortly after turning onto Cleveland Avenue, Plaintiff was followed and stopped by an individual identified as Deputy N. Litteer (Badge No. 1553-0604).

- 2

12. Deputy Litteer did not clearly state a reason for the traffic stop and upon Plaintiff questioning the reason for the stop, forcibly opened Plaintiff's car door with one hand while placing his other hand on his firearm.

13. Another officer then ordered Plaintiff to walk to the back of the vehicle.

14. Fearing for his safety, Plaintiff ran a short distance into a nearby neighborhood.

15. Deputies chased Plaintiff into the yard of an abandoned home and pushed his body against the fence.

16. Upon apprehending and subduing Plaintiff, officers forcefully put their knee into Plaintiff's ribs and onto his left foot causing extreme pain.

17. As Plaintiff screamed out in fear for his safety and in pain, the citizens in the nearby homes began to come outside to view the arrest.

18. Prior to and during the time in which Defendants ACSO and its officers, used excessive force against him, Plaintiff made no aggressive movements, furtive gestures, or physical movements which would suggest to a reasonable police officer that he had the will, or the ability, to inflict substantial bodily harm upon any individual.

19. Plaintiff was already subdued, surrounded by multiple deputies, was unarmed, and offered no resistance .

20. Prior to and during the time in which Defendant ASCO's officers used excessive force against Plaintiff, said officers were not faced with any circumstances which would have led a reasonable police officer to believe that Plaintiff posed an immediate threat of death or serious bodily injury to any person.

21. Deputies then transported Plaintiff to the Anderson County Detention Center located at 1009 David Lee Coffee Place, Anderson, South Carolina 29625.

22. Deputy Litteer issued two (2) citations: the first pursuant to S.C. Code §56-1-440 for driving without a license and the second pursuant to S.C. Code §44-53-370 for Simple Possession of Marijuana.

23. Plaintiff did not have any weapons on his person and had not posed a danger to the nearby community.

24. Plaintiff's arrest took place at approximately 4:35 p.m.

25. While enroute to ACDC, Plaintiff alerted the arresting officers that he was injured and that he had concerns related to pre-existing medical conditions.

26. Among other ailments, Plaintiff had undergone a kidney transplant that required immediate care considering the amount of force used during the arrest.

27. Because of Plaintiff's kidney transplant, trauma to his torso created an increased risk of injury requiring prompt medical evaluation.

28. While in Defendant ASCO's custody, Plaintiff repeatedly requested medical assistance, but the requests were ignored by Defendants for several hours.

29. Plaintiff did not receive medical attention until the next day on September 10, 2023.

30. At approximately 10:00 a.m., Plaintiff was taken by ambulance to the AnMed Medical Center Emergency Department, located at 800 N Fant Street, Anderson, South Carolina.

31. Examination revealed that Plaintiff suffered from a displaced fracture of the base of the left fifth toe.

32. Plaintiff continued to experience pain in his ribs for a week after the subject incident and upon presenting to the medical professionals at Piedmont Hospital, examination revealed that Plaintiff also suffered bruised ribs as a result of the force used during his arrest.

33. In the investigation of Plaintiff's claims, Plaintiff's counsel sent a Freedom of Information Act request to Defendant ASCO seeking the opportunity to obtain and review public records including the body worn camera footage capturing the arrest, documents detailing the pursuit, arrest, and detainment of Plaintiff, and other such documents related to the events giving rise to this action.

34. The initial response of Defendant's public information officer was that there was no record of an Arthur Brown arrested on September 9, 2023, despite records confirming that he was taken into custody and had been transported to the hospital from the Anderson County Detention Center.

35. Upon information and belief, the responsive records were concealed or otherwise destroyed pursuant to an internal instruction to purge Plaintiff's record.

36. Plaintiff did not apply for expungement.

37. As a direct and proximate result of the actions of the Defendants, Plaintiff suffered damages including, but not limited to pecuniary loss, pain and suffering specifically involving a fractured foot, bruised ribs, and restricted mobility, medical expenses, mileage incurred in traveling to medical appointments, and such additional damages as may be revealed during the trial of this matter.

### III.     ENUMERATION OF CLAIMS

**COUNT I: 42 USC §1983 VIOLATION -EXCESSIVE USE OF FORCE**

38. Plaintiff incorporates the previous paragraphs of the Complaint as if realleged herein.

39. This cause of action is set forth herein to redress the deprivation, under color of statute, ordinance, regulation, policy, custom, practice, and/or usage, of right, privileges, and/or immunities secured to Plaintiff by the Fourth Amendment to the Constitution of the

United States, including, but not limited to, the right to be free from unreasonable governmental seizures of his person.

40. At all times material hereto, Defendant Deputy Litteer was an employee and/or agent of Defendant ACSO and Defendant McBride and acting within the course and scope of his employment, under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs, and usages of ACSO.

41. As set forth in this Complaint, on the evening of September 9, 2023, Defendant Deputy Litteer used unnecessary and excessive force against Plaintiff, an unarmed male. The amount of force used by Defendant Deputy Litteer was objectively unreasonable in light of the facts and circumstances confronting him

42. By the time of this incident, the laws prohibiting Defendant's unconstitutional use(s) of force were clearly established under the Fourth Amendment of the United States Constitution.

43. Defendants knew or should have known, and every reasonable officer/deputy in their position would have concluded, that the force used against Plaintiff was excessive, unjustifiable and unlawful.

44. At the time of the incident, Plaintiff was an unarmed African American male, who had not committed any violent offense. With inadequate information to support the excessive force, the responding officers nevertheless violently slammed Plaintiff to the ground. Plaintiff was then aggressively restrained with one officer's knee in his ribs and another on his foot causing bruising and a fracture.

45. Plaintiff had the right to be free from unreasonable governmental seizures of his person, a right which was secured to Plaintiff by the provisions of the Fourth Amendment to the

United States Constitution, and by 42 U.S.C. § 1983. All of these interests were implicated by the wrongful conduct of Defendant Deputy Litteer, which proximately caused Plaintiff to suffer severe physical, emotional and psychological injuries.

46. As a direct and proximate result of the wrongful, intentional, and malicious acts and omissions of Defendant Deputy Litteer, Plaintiff was placed in great fear for his life and physical wellbeing and has suffered and continues to suffer extreme and severe mental and physical anguish, as well as great mental and physical pain and injury, all to his damage in a sum to be determined at trial.

47.  As a result of the misconduct, Defendant Deputy Litteer, is liable for Plaintiff's injuries.

48. As a further direct and proximate result of the wrongful, intentional, and malicious acts and omissions of Defendant Deputy Litteer, Plaintiff was required to employ, and did in fact employ, physicians and surgeons to examine, treat, and care for him, and has incurred expenses for emergent medical services, treatment, and care and other medical services, treatment, and care in an amount according to proof at trial.

49. Plaintiff is entitled to and hereby demands costs, attorney's fees, and expenses pursuant to 42 U.S.C. § 1988.

### COUNT II: 42 USC §1983 VIOLATION - UNLAWFUL SEIZURE

50. Plaintiff incorporates the previous paragraphs of the Complaint as if realleged herein.

51. At all times relevant to this Complaint, Defendant Deputy Litteer was acting under color of state law.

52. Defendant Deputy Litteer seized Plaintiff by initiating a traffic stop of Plaintiff's vehicle and subsequently placing Plaintiff under arrest.

53. The seizure of Plaintiff was without reasonable suspicion, without probable cause, and was otherwise unlawful under the Fourth Amendment to the United States Constitution. Defendant Deputy Litteer stopped Plaintiff's vehicle without clearly stating a reason for the stop and without identifying any traffic violation or other lawful basis to justify the seizure.

54. At the time of the stop, Plaintiff was traveling within the speed limit, his vehicle was in proper working condition, and Plaintiff maintained proper control of the vehicle.

55. Plaintiff did not commit any traffic violation, criminal offense, or other act that would give rise to reasonable suspicion or probable cause to justify the stop.

56. There was no lawful basis for the initial traffic stop, and the seizure of Plaintiff at that time was objectively unreasonable under the circumstances.

57. Following the unlawful stop, Defendant Deputy Litteer escalated the encounter and caused Plaintiff to be detained and ultimately arrested without probable cause.

58. At no point prior to the arrest did Plaintiff engage in conduct that would lead a reasonable officer to believe that Plaintiff had committed, was committing, or was about to commit a criminal offense.

59. The continued detention and arrest of Plaintiff were therefore unlawful and in violation of Plaintiff's clearly established constitutional rights.

60. As a direct and proximate result of Defendants' unlawful seizure, Plaintiff was deprived of his liberty and suffered damages including, but not limited to, physical injuries, pain and suffering, emotional distress, humiliation, and other damages to be proven at trial.

61. The rights violated by Defendants were clearly established at the time of the incident, such that a reasonable officer would have known that stopping and arresting Plaintiff under these circumstances was unlawful.

**COUNT III: 42 USC §1983 VIOLATION - DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS**

62. Plaintiff incorporates the previous paragraphs of the Complaint as if realleged herein.

63. At all times relevant to this action, Plaintiff was a pretrial detainee entitled to the protections of the Fourteenth Amendment to the United States Constitution.

64. Defendants, acting under color of state law, had a duty to provide constitutionally adequate medical care to Plaintiff and to refrain from acting with deliberate indifference to his serious medical needs.

65. Plaintiff had objectively serious medical needs, including but not limited to having sustained significant physical injury during the arrest and having swelling in his left foot after complaining of pain.

66. While enroute to the Anderson County Detention Center, Plaintiff alerted the Deputy Litteer that he was injured and that he had concerns related to pre-existing medical conditions.

67. Plaintiff made repeated requests for medical assistance that were ignored by Defendants for several hours.

68. Despite knowledge of the force used during arrest and Plaintiffs complaints, Deputy Litteer consciously disregarded a substantial risk of serious harm and acted with deliberate indifference by:

    a. Failing to timely evaluate Plaintiff after he was aggressively slammed to the ground and placed under excessive force;

b.  Failing to initiate emergency medical treatment;

c.  Failing to ensure timely diagnostic testing;

d.  Failing to monitor Plaintiff's condition for an extended period of time;

e.  Delaying transport to a hospital despite obvious signs of medical distress; and

f.  Other such acts disregarding a substantial risk of serious harm to Plaintiff.

69. Plaintiff did not receive medical attention until the next day on September 10, 2023, at approximately 10:00 a.m., when he was taken by ambulance to the AnMed Medical Center Emergency Department.

70. The delay in providing medical care to Plaintiff, who had a kidney transplant and acute injuries from the excessive force, constitutes deliberate indifference to a serious medical need.

71. As a direct and proximate result of Defendants' unconstitutional conduct, Plaintiff suffered severe injuries, including but not limited to bruised ribs, fracture of his left foot, prolonged pain and suffering, and the need for several months of medical treatment requiring immobilization of his foot.

## COUNT IV: 42 USC §1983 VIOLATION - *MONELL* LIABILITY

72. Plaintiff incorporates the previous paragraphs of the Complaint as if realleged herein.

73. At all times relevant to this action, Defendant ACSO was responsible for establishing, implementing, and enforcing policies, customs, and training governing the use of force, investigatory stops, arrests, and the provision of medical care to individuals in custody.

74. At all times relevant to this action, Defendant McBride was the final policymaker for the Anderson County Sheriff's Office with respect to law enforcement training, supervision, and operational policies.

75. The constitutional violations suffered by Plaintiff were caused by the execution of official policies, customs, or practices of the Anderson County Sheriff's Office, including but not limited to:

   a. Failing to adequately train deputies on the lawful basis required to initiate traffic stops and seizures;

   b. Failing to properly train and supervise deputies on the constitutional limitations governing the use of force;

   c. Failing to ensure that individuals in custody receive timely and adequate medical care;

   d. Failing to discipline or meaningfully investigate deputies who engage in unlawful seizures or excessive force; and

   e. Maintaining customs and practices that permit or tolerate the concealment, misreporting, or destruction of records related to arrests, detentions, and uses of force.

76. The above-described policies, customs, and practices were not isolated incidents but were widespread, persistent, and well-settled within the Anderson County Sheriff's Office.

77. On April 17, 2020 an ASCO officer entered the home of an intoxicated man suffering from mental illness without a warrant. The man brandished a knife and in response, the ASCO officer shot the man six times, killing him. The shooting happened within three minutes of entering the home.

78. On February 22, 2021, a woman transported to the Anderson County Detention Center after being beaten by officers of the Honea Path Police Department and forced out of her

home naked while people were gathered outside. The woman suffered visible injuries to her eyes, face, arms, legs, and feet.

79. On March 20, 2022, an ASCO deputy investigating a driving under the influence case forcibly pulled the driver out of the car ignoring signs that instead of driving under the influence, the person was suffering from a medical emergency. After jerking the person out of the car, the deputy slammed him on the hood of the patrol car and handcuffed his hands so tight that both of his wrists were broken in the process.

80. On June 26, 2022, Dylan James Dotson, was similarly injured while fleeing an officer in fear for his life. After being attacked by a K-9, Mr. Dotson complied with the ASCO officer's command to surrender. Despite Mr. Dotson's surrender, the ASCO officer ordered his K-9 partner to attack Mr. Dotson for a second time, resulting in a severe wound to Mr. Dotson's arm.

81. Defendants had actual or constructive knowledge of these unconstitutional customs, patterns, and practices, including prior incidents involving unlawful seizures, excessive force, failures to provide adequate medical care, and failures to properly document or preserve records of such incidents.

82. Upon information and belief Defendant ACSO has a history of employing officers that regularly abuse authority and use excessive and unreasonable force against individuals in Anderson County, South Carolina, depriving citizens of their bodily integrity.

83. Despite such knowledge, Defendants ASCO and McBride made a deliberate and conscious decision not to take corrective action, thereby demonstrating deliberate indifference to the known or obvious risk that constitutional violations would occur.

84. Defendants ASCO and McBride's failure to properly train, supervise, discipline, and control their deputies created an environment in which unconstitutional conduct was permitted to occur and was the moving force behind the violations of Plaintiff's constitutional rights.

85. Upon information and belief, prior to the incident involving Plaintiff, Defendant ASCO had been the subject of complaints, internal reports, or lawsuits alleging similar unconstitutional conduct, yet failed to implement meaningful changes to policy, training, supervision, or recordkeeping practices.

86. Defendant McBride had actual knowledge of repeated incidents involving unconstitutional seizures and excessive force before Plaintiff's arrest and nevertheless failed to modify policies, discipline deputies, or implement corrective training.

87. Plaintiff, through counsel, submitted a request pursuant to the South Carolina Freedom of Information Act seeking records related to his arrest, including body worn camera footage and incident documentation. In furtherance of unconstitutional customs and practices, Defendants' office initially responded that no record of Plaintiff's arrest existed, despite the fact that Plaintiff had been taken into custody, transported to the Anderson County Detention Center, and later transported to the hospital for treatment.

88. Plaintiff did not request or receive an expungement of his arrest, and there existed no lawful basis for the absence of such records. Upon information and belief, the failure to locate or produce these records was not an isolated occurrence but was consistent with a custom, policy, or practice of failing to properly document, retain, or disclose records of arrests and uses of force.

89. This custom of concealment and failure to maintain or produce records served to shield deputies from accountability, discourage investigation into misconduct, and allowed unconstitutional conduct, including unlawful seizures and excessive force, to occur without meaningful oversight or correction.

90. The unconstitutional policies, customs, and practices described herein directly and proximately caused Defendant deputies to unlawfully stop, seize, use excessive force against, and deny medical care to Plaintiff.

91. As a direct and proximate result of these policies, customs, and failures, Plaintiff suffered damages including, but not limited to, physical injuries, pain and suffering, emotional distress, medical expenses, and deprivation of his constitutional rights.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants, and award the following relief:

a. Compensatory damages in an amount to be determined at trial for physical injuries, pain and suffering, emotional distress, medical expenses, and other damages sustained as a result of Defendants' conduct;

b. Punitive damages against the individual Defendants;

c. Reasonable attorneys' fees, costs, and expenses pursuant to 42 U.S.C. § 1988 and other applicable law;

d. Pre-judgment and post-judgment interest as allowed by law;

e. Such other and further relief as the Court deems just and proper.

**RESPECTFULLY SUBMITTED**

This 27th day of July, 2026.

- 15

*/s/ Briana Richie*
BRIANA RICHIE
Federal Court ID No.: 14775
S.C. Bar No.: 106424

**FRAILS & WILSON**
211 Pleasant Home Road, Suite A-1
Augusta, GA 30907
Office:      706-855-6715
Facsimile:  706-855-7631
Email:      briana@frailswilsonlaw.com